UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FILED
SEP - 2 2016
CLERK, US DISTRICT COURT
NORFOLK, VA

COASTAL PRECAST SYSTEMS, LLC )
)
)
Plaintiff )
)
v. )  Civil Action No.: 2:16cv524
)
KRAIG ANDERSON

and

TARA R. BARKER a/k/a Tara R. Anderson

KCM, LLC d/b/a National Forming and Shoring Co.

and

LIG FORMING AND SHORING, LLC

Defendants.

## COMPLAINT

Plaintiff, Coastal Precast Systems, LLC ("CPS"), by counsel, for its Complaint against Kraig Anderson ("Anderson"), Tara R. Barker a/k/a Tara R. Anderson ("Barker") KCM, LLC d/b/a National Forming and Shoring Co. ("KCM"), and LIG Forming and Shoring, LLC ("LIG"), (collectively the "Defendants"), states as follows:

*Parties*

1.  CPS is a limited liability company organized and existing under the laws of the Commonwealth of Virginia with a principal place of business in Chesapeake, Virginia.

1

2. KCM is a limited liability company organized and existing under the laws of the State of Wyoming with a principal place of business in Coeur d'Alene, Idaho. KCM does business under the name National Forming and Shoring Company.

3. LIG is a limited liability company organized and existing under the laws of the State of Wyoming with a principal place of business in Coeur d'Alene, Idaho.

4. Anderson, an individual, is a resident and domiciliary of the State of Idaho. Upon information and belief, Anderson is a member and/or employee of both KCM and LIG, and is the husband of Barker.

5. Barker, an individual, is a resident and domiciliary of the State of Idaho. Upon information and belief, Barker is a member and/or employee of both KCM and LIG and is the wife of Anderson.

*Jurisdiction and Venue*

6. This Court has federal subject matter jurisdiction under the Racketeer Influenced Corrupt Organization Act ("RICO"), 18 U.S.C. §1964(c), federal question jurisdiction pursuant to 28 U.S.C. §1331, and supplemental jurisdiction pursuant to 28 U.S.C §1367(a).

7. Venue is proper in this jurisdiction pursuant to 28 U.S.C. §1391(b).

*Defendants' Wire Fraud*

8. KCM and LIG purport to be construction supply brokers. In reality, KCM and LIG were established to create the appearance of that they are legitimate construction supply brokers as part of a scheme to defraud persons by inducing them to send money to purchase equipment and/or materials which Defendants had no intent to provide.

9. Anderson is the organizer and, on information and belief, a member and/or employee of KCM and LIG. Barker, on information and belief, is Anderson's wife and a

member and/or employee of LIG and KCM. She is the statutorily-required point of contact on the official 2016 annual reports for KCM and LIG filed with Wyoming Secretary of State.

10. Anderson organized both KCM and LIG on August 1, 2014 in Wyoming. KCM's articles of organization state its principal place of business as 212 Ironwood Drive, #D182, Coeur d'Alene, Idaho 83814. LIG's articles of organization state its principal place of business as 212 Ironwood Drive, #D181, Coeur d'Alene, Idaho 83814. On information and belief, these two addresses are post office boxes rented from a business called Postal Annex in Coeur d'Alene, Idaho. On information and belief, KCM and LIG were organized for the purpose of defrauding persons by inducing them to send money to purchase equipment and/or materials which Defendants had no intent to provide.

11. On September 24, 2014, shortly after the formation of KCM and LIG, Anderson and Barker transferred their jointly-owned principal residence, located at 7177 Heine Drive, Coeur d'Alene, Idaho, to Soulitude Trust, LLC, an Idaho limited liability company to avoid their creditors.

12. Soulitude Trust, LLC was organized by Anderson and Barker. Its 2016 statutorily-required annual statement filed with the Idaho Secretary of State identifies Anderson and Barker as its members and states its principal place of business is 212 Ironwood Drive, #D187, Coeur d'Alene, Idaho 83814. On information and belief, this is a post office box rented from a business called Postal Annex in Coeur d'Alene, Idaho. On information and belief, Anderson and Barker transferred their residence to Soulitude Trust, LLC for the purpose of evading and defrauding their creditors and those of KCM and LIG.

13. On or about January 22, 2016, Anderson, using the email address kraig@ligforming.com, sent an email to CPS confirming a conversation where CPS expressed

interest in purchasing a quantity of Symons "Max-A-Form" concrete forms. In this email, Anderson represented to CPS that LIG required a down payment of 90% of the purchase price. Anderson further represented that the forms would be delivered within three weeks of receipt of the payment with the remaining 10% due upon receipt of the forms. In addition to the price of the forms, CPS was required to pay to ship the forms from Texas to Chesapeake, Virginia.

14. Between January 22, 2016 and February 8, 2016, CPS and Anderson (using an LIG email address) exchanged several emails regarding the specific forms CPS required.

15. On or about February 8, 2016, CPS received an email from Val Martinez, a KCM employee with the email address val@ntlforming.com, with invoice #754 in the amount of $64,769.10 attached. The email instructed CPS to overnight a payment of $58,292.19 to KCM. A copy of this invoice is attached as Exhibit 1. Up until this point, all of CPS' communications had been with LIG and CPS believed that it was negotiating with LIG, not KCM.

16. After receiving invoice #754, CPS realized that the size of the forms it had ordered was incorrectly stated. CPS, Anderson and Val Martinez exchanged several emails to identify and order the correct forms. On February 25, 2016, CPS received an email from Anderson, using an LIG email address, notifying CPS that the forms they needed were no longer available.

17. On February 28, 2016, Anderson sent an email to CPS informing them that the required forms could still be purchased, but only if CPS immediately wired a down payment to KCM. In fact, the forms CPS believed it was ordering were not available and would not be shipped.

18. On February 29, 2016, Val Martinez, using a KCM email, sent CPS a "revised" invoice #754 in the amount of $64,769.10, with instructions to wire $58,292.19 to KCM. A copy

4

of this invoice is attached as Exhibit 2. When Defendants issued this "revised" invoice, they knew that the forms were not available. The "revised" invoice was issued solely in an effort to defraud CPS.

19. On February 29, 2016, CPS transmitted purchase order #120385 to Defendants and initiated a wire transfer to Defendants in the amount of $58,292.19. A copy of the purchase order and wire confirmation is attached as Exhibits 3 and 4, respectively. The funds were received by Defendants' bank that same day.

20. CPS issued its purchase order and transferred its funds to Defendants in reliance on Defendants' representations that the forms CPS ordered were available and would be delivered within three weeks of receipt of the down payment. At the time Defendants made these representations to CPS, they knew them to be false.

21. After receipt of the down payment, and in furtherance of their scheme to defraud CPS, Defendants continued to make materially false representations to CPS regarding the purported shipment of the forms. Defendants first represented that the forms would ship by April 1, 2016. On April 7, 2016, Anderson emailed CPS that the forms would ship the week of April 11, 2016.

22. On April 27, 2016, the forms CPS had ordered from Defendants still had not been shipped. That same day Anderson sent an email to CPS with a list of available forms that "can be shipped immediately." At the time Anderson made this representation, he knew it to be false.

23. On May 20, 2016, CPS had still not received any of the forms that it had ordered, despite having wired $58,292.19 to Defendants. On that day, Anderson sent another email to CPS representing that the forms had been shipped and that they would arrive early the next

week. The forms did not arrive as promised. At the time Anderson made this representation, he knew it to be false.

24. On June 5, 2016, Anderson represented yet again that delivery of the forms was imminent. This time Anderson represented that the forms would be delivered on June 8, 2016, but none were delivered to CPS.

25. Throughout the summer of 2016, CPS made repeated verbal demands for repayment of the $58,292.19 it wired to KCM, to which Defendants made no response. On August 17, 2016, CPS sent a formal written demand to Anderson, Barker, KCM, and LIG. A copy of this demand letter is attached as Exhibit 5. CPS has received no response to this demand letter. As of the date of this suit, Defendants have failed to repay, and continue to fail to repay, the amounts it owes to CPS.

26. Despite making a payment of $58,292.19 and receiving repeated representations from Defendants that the forms would be delivered, CPS never received any of the forms that it ordered.

27. Defendants knew that each of their representations to CPS regarding the availability and shipment of the ordered forms were false. These misrepresentations were made for the purpose of defrauding CPS.

28. Each of the fraudulent emails and telephone calls sent and made by Defendants regarding the availability and shipment of the forms CPS had ordered constitute wire fraud, as that term is defined in 18 U.S.C. §1343.

*Additional Racketeering Activity*

29. Upon information and belief, Defendants have defrauded others in the same manner they have defrauded CPS.

30. By way of example, Defendants engaged in a scheme to defraud Gracon Construction, Inc. ("Gracon"), a Texas corporation, as follows:

   a. On or about December 17, 2014, Gracon received an invoice from LIG in the amount of $129,947.07 for 8,133 sq. ft. of used concrete forms.

   b. On or about December 22, 2014, Gracon wired LIG $116,952.36, an amount representing 90% of the agreed purchase price, to LIG.

   c. Between December 23, 2014 and January 6, 2015, Gracon and Anderson exchanged numerous emails and telephone calls regarding the status of delivery of the concrete forms.

   d. Between January 7, 2015 and February 18, 2015, Gracon received repeated promises from Anderson and LIG that the concrete forms would be shipped. Despite these promises no forms were received.

   e. On or about February 20, 2015, Gracon received approximately $24,000 worth of materials from LIG, which did not match the original order.

   f. On or about March 12, 2015, Gracon received a second shipment from LIG. Not only did this shipment not include all of the materials Gracon had ordered, but they were of an unacceptably poor quality.

   g. Despite not providing Gracon with the concrete forms it ordered, and despite repeated demand, Anderson and LIG did not return any of the $116,952 Gracon paid.

   h. Each of the fraudulent emails sent and telephone calls made by Anderson and LIG to Gracon constitute wire fraud as that term is defined in 18 U.S.C. §1343.

31. Defendants also engaged in a scheme to defraud Allen Concrete and Masonry, Inc. ("Allen Concrete"), a Florida corporation, as follows:

   a. In September and October 2014, Allen Concrete ordered 139 concrete forms from KCM for a total price of $142,500. The entire purchase price was wired to KCM upfront and before Allen Concrete received any of the forms it ordered.

   b. Anderson and KCM never sent Allen Concrete the entire order, failing to ship approximately $29,838.71 worth of forms to Allen Concrete.

   c. Upon information and belief, Anderson and KCM repeatedly assured Allen Concrete that the remaining $29,838.71 worth of forms would be delivered. Despite these promises, the remaining $29,838.71 worth of forms were never delivered.

   d. Despite not providing Allen Concrete with the concrete forms it ordered, and despite repeated demand, Anderson and KCM did not return any of the $29,838.71 Allen Concrete paid.

   e. Each of the fraudulent communications sent or made by Anderson and KCM to Allen Concrete constitute wire fraud as that term is defined in 18 U.S.C. §1343.

32. Defendants have also defrauded Tucker-Kirby Company ("Tucker-Kirby"), a North Carolina Company, as follows:

   a. In November 2015, Tucker-Kirby wired LIG $56,880.00 for the purchase of tilt-up concrete wall braces.

   b. In December 2015, LIG and Anderson informed Tucker-Kirby that the braces it had paid for were not going to be shipped.

    c. Tucker-Kirby made repeated demands to LIG and Anderson for the repayment of the $56,880.00 it transferred to Defendants.

    d. Despite repeated representations from LIG and Anderson that the money would be returned, Tucker-Kirby was never refunded any of the $56,880.00 it paid to LIG.

    e. Each of the fraudulent communications sent or made by Anderson and LIG to Tucker-Kirby constitute wire fraud as that term is defined in 18 U.S.C. §1343.

33. Defendants have engaged in a pattern of racketeering activity whereby the have transmitted, by wire in interstate commerce, writings, signs, signals, pictures, or sounds for the purpose of executing a scheme to defraud various companies, including CPS.

*Count I – RICO §1962(c) Violation*

34. The allegations of paragraphs 1 through 33 are incorporated as if fully set forth herein.

35. Anderson, Barker, KCM and LIG combined to create an enterprise engaged in and whose activities affect interstate commerce. The sole purpose of this enterprise was to defraud persons by inducing them to send money to purchase equipment and/or materials which Defendants had no intent to provide.

36. Defendants conducted and participated in the conduct of the enterprise through a pattern of racketeering activity, as described herein, and for the unlawful purpose of intentionally defrauding CPS.

37. Pursuant to and in furtherance of his fraudulent scheme, Defendants committed multiple related acts of wire fraud, as that term is defined in 18 U.S.C. §1343.

38. Defendants' acts identified herein, combined with Defendants fraudulent scheme perpetrated against at least Gracon, Allen Concrete, and Tucker-Kirby, constitute a pattern of racketeering activity pursuant to 18 U.S.C. §1961(5).

39. Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering activity and the activity described above in violation of 18 U.S.C. §1962(c).

40. As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. §1962(c), CPS has been injured in its business and property by wiring KCM the sum of $58,292.19. Furthermore, Defendants' fraudulent emails caused CPS to refrain from exercising its legal rights to its detriment.

41. Pursuant to 18 U.S.C. §1964(c), CPS is entitled to treble damages in the amount of $174,876.57 and attorney's fees.

*Count II – RICO §1962(d) Violation*

42. The allegations of paragraphs 1 through 41 are incorporated as if fully set forth herein.

43. As set forth above, the Defendants agreed to conspire and violate 18 U.S.C. §1962(c). Specifically, the Defendants conspired and agreed to conduct the affairs of the enterprise through a pattern of racketeering activity.

44. The Defendants conspired to engage in a scheme where fraudulent emails and telephone calls were sent and made to induce CPS and others to pay for concrete forms and other goods that were never shipped or received.

45. The Defendants have intentionally conspired and agreed to directly and indirectly conduct the affairs of the enterprise through a pattern of racketeering activity. Specifically,

Defendants conspired to commit, and actually committed, wire fraud as part of a scheme to defraud CPS in the amount of $58,292.19. The Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C. §1962(c) in violation of 18 U.S.C. §1962(d).

46. As a direct and proximate result of the Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. §1962(d), CPS has been injured in its business and property in the sum of $58,292.19.

47. Pursuant to 18 U.S.C. §1964(c), CPS is entitled to treble damages in the amount of $174,876.57 and attorney's fees.

*Count III – Fraud/Intentional Misrepresentation*

48. The allegations of paragraphs 1 through 47 are incorporated as if fully set forth herein.

49. Between January 22, 2016 and June 5, 2016, Defendants made repeated material misrepresentations to CPS regarding the availability of certain concrete forms that CPS had ordered and for which CPS had paid. Specifically, Defendants repeatedly and knowingly misrepresented the shipping date of the forms CPS had ordered.

50. At the time each of the misrepresentations described herein were made, Defendants intended to mislead CPS.

51. CPS relied on these misrepresentations when it wired $58,292.19 to KCM and when it refrained from enforcing its legal rights against Defendants.

52. As a result of Defendants' fraud, CPS has been damaged in the sum of $58,292.19.

53. As a result of Defendants' fraud, CPS is entitled to punitive damages in the sum of $350,000.

*Count IV – Negligent Misrepresentation*

54. The allegations of paragraphs 1 through 53 are incorporated as if fully set forth herein.

55. Between January 22, 2016 and June 5, 2016, Defendants made repeated material misrepresentations to CPS regarding the availability of certain concrete forms that CPS had ordered and for which CPS had paid. Specifically, Defendants repeatedly and knowingly misrepresented the shipping date of the forms CPS had ordered.

56. Each of the misrepresentations described herein were made negligently. At the time of each misrepresentation, Defendants knew or should have known that the representations were false and that CPS would rely on those misrepresentations.

57. CPS relied on these misrepresentations when it wired $58,292.19 to KCM and when it refrained from enforcing its legal rights against Defendants.

58. As a result of Defendants' fraud, CPS has been damaged in the sum of $58,292.19.

*Count V – Unjust Enrichment*

59. The allegations of paragraphs 1 through 58 are incorporated as if fully set forth herein.

60. By virtue of its paying KCM $58,292.19, CPS conferred a benefit upon KCM.

61. KCM knew that CPS had paid KCM and should have reasonably expected that it was to repay CPS by providing concrete forms.

62. Despite never providing CPS with any concrete forms, KCM retained the entire $58,292.19 paid to it by CPS.

63. Accordingly, KCM has been unjustly enriched at the expense of CPS.

64. As a result of KCM's unjust enrichment, CPS has suffered damages in the sum of $58,292.19.

*Count VI- Breach of Contract*

65. The allegations of paragraphs 1 through 64 are incorporated as if fully set forth herein.

66. KCM and CPS had a contract, as evidenced by CPS' purchase order #120385, whereby CPS agreed to purchase concrete forms from KCM for the amount of $64,769.10.

67. Under the terms of this contract, CPS was to pay 90% of the purchase price, or $58,292.19 up front and the remaining 10% upon delivery of the forms. CPS complied with the terms of the contract by wiring KCM a down payment in the amount of $58,292.19.

68. KCM has breached the terms of the contract by failing to deliver any of the concrete forms ordered by CPS.

69. As a result of KCM's breach of the contract, CPS has suffered damages in the sum of $58,292.19.

WHEREFORE, Plaintiff, Coastal Precast Systems, LLC, by counsel, prays that this Court:

(i) Enter judgment in its favor against Kraig Anderson, Tara Barker, KCM, LLC and LIG Forming and Shoring, LLC, jointly and severally, with respect to Count I in the sum of $174,876.57 plus attorney's fees;

(ii) Enter judgment in its favor against Kraig Anderson, Tara Barker, KCM, LLC, and LIG Forming and Shoring, LLC, jointly and severally, with respect to Count II in the sum of $174,876.57 plus attorney's fees;

(iii) Enter judgment in its favor against Kraig Anderson, KCM, LLC, and LIG Forming and Shoring, LLC, jointly and severally, with respect to Count III in the sum of $58,292.19 plus punitive damages in the amount of $350,000;

(iv) Enter judgment in its favor against Kraig Anderson, KCM, LLC, and LIG Forming and Shoring, LLC, jointly and severally, with respect to Count IV in the sum of $58,292.19;

(v) Enter judgment in its favor against KCM, LLC with respect to Count V in the sum of $58,292.19;

(vi) Enter judgment in its favor against KCM, LLC with respect to Count VI in the sum of $58,292.19;

(vii) Award Coastal Precast Systems, LLC its costs and expenses, including attorney's fees, incurred in this matter; and

(viii) Grant Coastal Precast Systems, LLC all other just and necessary relief.

Dated: September 2, 2016

By: *C. Wiley G* (signature)
James L. Chapman, IV (VSB No. 21983)
C. Wiley Grandy (VSB No. 82154)
CRENSHAW, WARE & MARTIN, P.L.C.
150 West Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
cwgrandy@cwm-law.com
*Counsel for Coastal Precast Systems, LLC*